# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

BRIAN T. STEPP,

                                   :

        Petitioner,                           Case No. 1:10-cv-282

                                   :                District Judge Sandra S. Beckwith

    -vs-                                   Magistrate Judge Michael R. Merz

WARDEN, Warren Correctional
  Institution,

                                     :

        Respondent.

## REPORT AND RECOMMENDATIONS

Petitioner Brian Stepp brings this habeas corpus action under 28 U.S.C. § 2254 to obtain relief from his conviction in the Butler County Common Pleas Court. He was tried and convicted on three counts of rape, three counts of kidnapping, and one count of sexual battery and sentenced to an aggregate term of imprisonment of fifty-five years. Represented by the Ohio Public Defender, Mr. Stepp pleads one ground for relief:

> **Ground One:** Trial counsel provided constitutionally ineffective assistance of counsel when he failed to timely notify the trial court of his intent to offer evidence covered by Ohio's Rape Shield statute. Counsel's failure to perform in an objectively reasonable manner caused actual prejudice. Had Mr. Stepp been permitted to confront his accuser, Ms. Carrey Tidmore, she would have been discredited as a witness, and Mr. Stepp would not have been convicted of the crimes that she alleged.
>
> **Supporting Facts:** Petitioner Brian Stepp was convicted of the rape and kidnapping of three women. One of these women was Carrey Tidmore. There were no hairs, fibers, or DNA linking Mr. Stepp to Ms. Tidmore. Rather, his convictions for the rape, kidnapping, and

-1-

sexual battery of Ms.Tidmore were based on her testimony. Mr. Stepp wanted to discredit Ms. Tidmore by establishing her propensity to lie and by showing the jury that Ms. Tidmore would do just about anything to curry favor with law enforcement, so she could continue to test dirty on her drug tests while being on probation. To do so, Mr. Stepp wanted to confront Ms. Tidmore about her prior sexual relationship with her probation officer.

Ohio's Rape Shield statute states that a defendant must move for a pretrial hearing if he or she wants to admit evidence of the victim's prior sexual conduct. See Ohio Rev. Code § 2907.02(E). Here, Mr. Stepp's trial counsel disregarded that rule and waited until he was conducting Ms. Tidmore's cross-examination to raise the issue with the trial court. The court refused to allow cross-examination into the matter because counsel did not move for the pretrial hearing. Because of trial counsel's complete disregard of Ohio's Rape Shield statute, Mr. Stepp was prevented from confronting his accuser. Mr. Stepp appealed his conviction. The court of appeals held that the subject-matter fell within Ohio's Rape Shield statute but concluded that Mr. Stepp had not established prejudice because of the substantial evidence of Mr. Stepp's guilt.

As there was no evidence of Mr. Stepp's guilt, regarding the charges involving Ms. Tidmore, except her testimony, the court of appeals' decision involved an unreasonable application of federal law and resulted in a decision that is based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Indeed, had Mr. Stepp been given the opportunity to discredit Ms. Tidmore, he would not have been convicted of the crimes against her.

(Petition, Doc. No. 1, PageID 16-17.)

Respondent does not interpose any procedural defense, but instead defends on the merits, asserting that the Ohio Court of Appeals decision was not an objectively unreasonable application of clearly established United States Supreme Court precedent.

When a state court decides a federal constitutional question later presented in habeas corpus, the federal court must defer to the state court's ruling unless it is contrary to or an objectively unreasonable application of clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1);

-2-

*Brown v. Payton,* 544 U.S. 133, 134 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams*

*(Terry) v. Taylor,* 529 U.S. 362 (2000).

The claim of ineffective assistance of trial counsel and the accompanying claim of a violation

of the Confrontation Clause were presented to the Ohio Twelfth District Court of Appeals as Stepp's

Assignment of Error No. 3.  The court ruled on that assignment as follows:

> [*P39]  "TRIAL COUNSEL PROVIDED CONSTITUTIONALLY INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HE FAILED TO RAISE EVIDENCE THAT CLEARLY FELL WITHIN THE RAPE SHIELD LAW IN PRETRIAL MOTION. THE TRIAL COURT VIOLATED STEPP'S RIGHT TO CONFRONTATION WHEN IT EXCLUDED RELEVANT IMPEACHMENT EVIDENCE."
>
> [*P40]  Stepp argues that his trial counsel provided him with ineffective assistance by failing to have certain evidence admitted at trial, which, he contends, would have shown C.T. had a motive to fabricate her allegations against him.
>
> [*P41]  At trial, C.T. acknowledged on cross-examination that she had tested "dirty" on multiple occasions in August and September of 2003. When Stepp's trial counsel asked C.T. why she did not receive any sanction for having violated the terms of her probation, the state objected, and the trial court sustained the objection.
>
> [*P42]  At a sidebar conference, Stepp's trial counsel stated that if he were allowed to pursue this line of questioning, C.T.'s testimony would show that during the summer of 2003, she was having a sexual relationship with her probation officer in exchange for the officer's allowing her the freedom to violate the terms of her probation. Counsel contended that after this relationship was revealed, C.T. no longer had "control over the probation process, so she made up the rape allegation [against Stepp] *** so that she could present herself as a victim and [again] receive control of the situation[.]"
>
> [*P43]  The trial court refused to change its ruling sustaining the state's objection, finding that the proposed line of questioning was impermissible under the rape shield law, and that Stepp's trial counsel had a duty to raise this testimony at a pretrial hearing so that C.T. would have had the opportunity to have counsel present.

[*P44] Stepp now argues that the evidence the trial court excluded "was crucial to prove [C.T.]'s motive to fabricate the allegations [against him,]" and even if the "proffered" evidence falls squarely within the rape shield statute, the evidence should have been admitted, nevertheless, because exclusion of the evidence violated his Sixth Amendment right to confront C.T. He contends it is apparent from the trial court's remarks at the side bar conference that the court "would have considered this evidence had it been properly raised in a rape shield hearing[,]" and therefore, his trial counsel provided him with ineffective assistance by not doing so. We find this argument unpersuasive.

[*P45] To prevail on an ineffective assistance claim, a defendant must show that (1) his trial counsel's performance was "deficient" in that it "fell below an objective standard of reasonableness"; and (2) he was prejudiced by that deficient performance in that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington* (1984), 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L. Ed. 2d 674. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A failure to make a sufficient showing on either the "performance" prong or the "prejudice" prong of the *Strickland* standard will doom a defendant's ineffective assistance claim. *Id.* at 697.

[*P46] The line of questioning that Stepp's trial counsel sought to pursue would have produced testimony from C.T. that would have clearly violated the rape shield law contained in R.C. 2907.02. That section states in pertinent part:

[*P47] "(D) Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

[*P48] "***

[*P49] "(E) Prior to taking testimony or receiving evidence of any

-4-

sexual activity of the victim *** in a proceeding under this section, the court shall resolve the admissibility of the proposed evidence in a hearing in chambers, which shall be held at or before preliminary hearing and not less than three days before trial, or for good cause shown during the trial.

[*P50] "(F) Upon approval by the court, the victim may be represented by counsel in any hearing in chambers or other proceeding to resolve the admissibility of evidence. If the victim is indigent or otherwise is unable to obtain the services of counsel, the court, upon request, may appoint counsel to represent the victim without cost to the victim."

[*P51] Stepp acknowledges that the exceptions listed in R.C. 2907.02(D) to the general prohibition against the admission of evidence of specific instances of the victim's past sexual activity, e.g., evidence of the origin of semen, pregnancy, or disease, etc., are inapplicable in this case. Nevertheless, he contends that his right to confront C.T., who was one of his accusers, outweighed the interests sought to be protected by the rape shield law under the circumstances of this case.

[*P52] However, when the trial court refused to allow Stepp's trial counsel to pursue the line of questioning regarding C.T.'s alleged, prior relationship with her former probation officer, the court characterized this event as a "distinct separate incident," thereby indicating that the court felt this alleged, past incident had little or no probative value.

[*P53] Furthermore, the point that Stepp's trial counsel was trying to make, i.e., C.T. fabricated the allegation against Stepp to regain "control" of the situation regarding her probation after her affair with her former probation officer was revealed, was a tenuous one, at best, and therefore, it is unlikely the trial court would have found, under these circumstances, that Stepp's confrontation rights outweighed the interests sought to be protected by this state's rape shield law.

[*P54] Moreover, it cannot be shown that there was a reasonable probability that the outcome of Stepp's trial would have been different had this evidence been admitted. The evidence of Stepp's guilt was formidable and, arguably, overwhelming. C.T.'s testimony was corroborated by the other victims in the case, as well as the evidence the police found as a result of searching Stepp's residence, which included a red vehicle and a silver badge that matched C.T.'s

version of events. Also, the detectives who searched Stepp's residence testified that the layout of Stepp's house matched C.T.'s description of the house. C.T.'s testimony was also corroborated by that of H.K. and J.G., who testified that Stepp attacked them in a similar fashion and around the same time period.

[*P55] When the state's evidence against Stepp is viewed in its entirety, it is clear that the trial court's exclusion of evidence regarding C.T.'s alleged affair with her former probation officer did not change the outcome of Stepp's trial, nor does it undermine our confidence in the outcome of these proceedings. *Strickland*, 466 U.S. at 694.

[*P56] Therefore, Stepp's third assignment of error is overruled.

*State v. Stepp,* 2008 Ohio 4305, ¶¶ 39-56, 2008 Ohio App. LEXIS 3613, *13-19 (Ohio App. 12th Dist. Aug. 25, 2008). It is this decision which Stepp must prove is an objectively unreasonable application of clearly established Supreme Court precedent to prevail in this case.

## Testimony at Trial

At trial in February, 2007,[1] Carrey Tidmore testified on direct as follows: In November and December of 2003, she was living in Middletown, Ohio, and supporting herself, including her crack cocaine addiction, by prostituting herself. (Trial Tr. PageID at 460.)[2] She had prostituted herself off and on since she became addicted at age 16, approximately twenty years before the trial. *Id.* Although living in Middletown, she was working as a prostitute in Hamilton and using crack every

---

[1] Trial was delayed for several years after indictment because Mr. Stepp fled to Europe and had to be extradited.

[2] Trial transcript references are to the pages in the electronic record before this Court because the typed transcript is multiply and confusingly paginated.

day. *Id.* at PageID 461.  Towards the end of November, she testified she was picked by a man and

raped twice. *Id.* at PageID 463.  She had been dropped off by a friend at Lincoln and Dixie,

intending to "turn a trick." *Id.* at PageID 464.  Shortly after she was dropped off, she was picked

up by Mr. Stepp. *Id.*  at PageID 465.  Stepp was driving fast and evaded her question about what

sexual activity he wanted to purchase. *Id.* at PageID 466.  When she asked him a second time what

he wanted, he pulled out a badge and told her she was under arrest for prostitution. *Id.* at PageID

467. Then he told her to put on her seatbelt and lock the door. *Id.*  After threatening to shoot her, he

pulled into the parking lot of the Liberty police station on Route 4 and said he knew a girl named

Robin Curry who had done him a "favor" and he had "just dropped her off." *Id.* at PageID 468.

Instead of offering a "favor," Ms. Tidmore says she decided to just get it over with and told him to

"take her in." *Id.* at PageID 469.  Instead, he drove to a corn field and forced her to perform oral sex

on him. *Id.* at PageID 469-470.  Afterwards, having handcuffed Ms. Tidmore and put her back in

the car, Stepp drove her to a small house. *Id.* at PageID 476.  Once there, he ordered her to take a

shower. *Id.* at PageID 477.  After the shower, he had her lie down on a dark colored couch in the

living room and "had sex with me." *Id.* at PageID 479.  He then told her to get dressed and dropped

her off at a Shell station. *Id.* at PageID 480.  She testified the whole event took about five hours and

was the scariest event of her life. *Id.*  She rejected the Shell clerk's offer to call the police because

she was on probation and knew she would get extra time for prostituting.  *Id.* at PageID 481.

Two days later Ms. Tidmore had her boyfriend take her to the hospital in Fairfield, was

treated, and was interviewed by rape victim advocates. *Id.* at PageID 483.  She did not go to the

police after the hospital because she did not want to be "violated"[3] for prostituting herself while on probation. (Trial Tr. at PageID 485.) She ultimately told the police in early 2004 when she was at the detective's office as a witness on another matter. *Id.* at PageID 485-486. She volunteered to Lieutenant Craft of the Butler County Sheriff's Office that her rapist had been a "white, thin male, with light hair, drove a red four-door car." *Id.* at PageID 487. Several days later Detective Hardin showed her some photographs from which she picked Stepp. *Id.* at PageID 487-488. She described the house where the second rape took place as "very messy. The bathroom, parts of it looked like it was in remodeling or had been destroyed, one." *Id.* at PageID 490.

Ms. Tidmore was then cross-examined by defense counsel Christopher Pagan. He began by eliciting admissions of seven prior theft and theft-related convictions from Ms. Tidmore as well as several falsification and failure to comply convictions. *Id.* at PageID 496-498. at the time of the rapes, she was on probation on three different felony convictions. *Id.* at PageID 498. She admitted that she had been concealing her prostitution from her boyfriend. *Id.* at PageID 499. However, she claimed she had been drug free for about a year until about two weeks before the rape. *Id.* at PageID 504. Mr. Pagan then confronted her with positive cocaine tests on August 13, August 19, and September 2, 2003. *Id.* at PageID 505-506. He then confronted her with her hospital record from November 10, 2003, and reminded her that, instead of reporting a rape two days before, she had told the hospital she had been raped at a party five days before. *Id.* at PageID 508. She admitted that on the same day she went to the hospital, she had admitted to her probation officers, Messrs. Beatte and Scott, that she had used cocaine on November 3, 2003. *Id.* at PageID 514. She knew she would

---

[3] "Violated" as used in the testimony is shorthand for being charged with a probation violation. It is not used to mean being subjected to sexual attack.

be "violated" on the basis of that admission and in fact was in jail in late November, 2003, having

been arrested on November 20, 2003.  Trial Tr.at PageID 511, 515, 519.  Ms. Tidmore denied

refusing a rape kit at the hospital, saying instead that a rape kit could not be done because the

incident had been more than seventy-two hours before.  *Id.* at PageID 517-518.

Starting at PageID 520, the transcript records the exchange which is the subject of this

habeas case.  Ms. Tidmore was asked why she wasn't "violated" and the judge sustained the

objection for the obvious reason that it called for her to speculate about why someone else did not

do something.  This led to the sidebar discussion at which Mr. Pagan revealed his theory that Ms.

Tidmore had invented the rape by Mr. Stepp so that she could regain the control of her probation

situation which she exercised during the summer of 2003 by bribing her prior probation officer with

sex.  *Id.* at PageID 521-522.  The prosecutor asserted this would come within the rape shield law.

*Id.*   The judge ruled both that this issue should have been raised for a hearing prior to trial and that

it was within the rape shield law and therefore inadmissible because it was "a distinct separate

incident."  *Id.* at PageID 523.

## Analysis

## Ineffective Assistance of Trial Counsel

The first step in Petitioner's argument is that Mr. Pagan performed deficiently by not seeking

a rape shield hearing before the trial.  It is correct that the statute in question calls for such a hearing,

that Mr. Pagan did not seek one, and that one of the reasons the judge cut off the examination in

question is because the issue was untimely raised.[4]  The Court of Appeals did not directly address

the question whether failure to obtain a pre-trial hearing was deficient performance; instead, it held

that "[t]he line of questioning that Stepp's trial counsel sought to pursue would have produced

testimony from C.T. that would have clearly violated the rape shield law contained in R.C. 2907.02."

*State v. Stepp, supra*, ¶ 46.  In other words, the Court of Appeals held it would not have mattered

if Mr. Pagan had raised the matter in a pretrial hearing as required by the statute, he would still not

have been successful in getting the evidence admitted.

Of course, this Court is bound by the Court of Appeals interpretation of Ohio law.  *Railey*

*v. Webb*, 540 F.3d 393 (6th Cir. 2008), *quoting Bradshaw v. Richey,* 546 U.S. 74, 76 (2005)("We

have repeatedly held that a state court's interpretation of state law, including one announced on

direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.")*,*

*Maldonado v. Wilson*, 416 F.3d 470 (6th Cir. 2005)*; Vroman v. Brigano*, 346 F.3d 598, (6th Cir.

2003); *Caldwell v. Russell*, 181 F.3d 731, 735-36, (6th Cir. 1999); *Duffel v. Dutton,* 785 F.2d 131,

133 (6th Cir. 1986).  Thus even if it was deficient performance for Mr. Pagan not to request a pretrial

rape shield hearing, Mr. Stepp suffered no prejudice because the testimony would have been barred

under the rape shield statute in any event.

The Court of Appeals analysis of the prejudice prong of *Strickland* goes further and

essentially holds that, even if Mr. Pagan had been able to get the evidence in, it would not have been

persuasive.  This Court agrees.  Petitioner argues that it was only Ms. Tidmore's testimony which

---

[4] The statute allows the matter to be dealt with during trial "for good cause shown," but
there is no indication Mr. Pagan learned of this possible line of cross-examination during trial or
of any other good cause for the delay.

convicted him and that is true.[5]  However, her description of the offense is very consistent with the

descriptions given by the other two victims: prostitutes who get into a red car with a man, thinking

he is a customer, who then impersonates a police officer and rapes them.  Moreover, Ms. Tidmore

gave an accurate description of the house where the second rape took place.  Mr. Pagan had a great

deal of excellent general impeachment material – a number of badly inconsistent prior statements

under oath, a lengthy drug addiction, numerous convictions for *crimen falsi* offenses – all of which

the jury heard.  Petitioner's theory of the probative value of the excluded evidence is, as the Court

of Appeals put it, "tenuous at best."  Petitioner's counsel have not explained in the Traverse how

making up a rape story in February, 2004,[6] was going to give Ms. Tidmore back the control over her

probation that she had with the officer whom she bribed with sex, especially when she had already

been "violated" and jailed from November, 2003, until at least January, 2004.  In other words, the

theory of impeachment was fanciful and Petitioner's trial attorney's likely purpose was to impeach

Ms. Tidmore's character with proof of her sexual activity with the probation officer.

## Confrontation Clause

---

[5] True as to the assaults of which Ms. Tidmore was the victim.  The evidence of assaults on the other two complaining witnesses was independent of Mr. Tidmore's testimony.

[6] Petitioner claims Ms. Tidmore first reported the rape on November 10, 2003, when she went to the hospital.  But what she reported (and probably concocted) was a rape at a party either two or five days before.  She never told the story of her rapes by Petitioner until February, 2004, after one of the other victims had come forward.  She had a motive to concoct the "party rape" because as of November 10, 2003, she was back with her boyfriend, who actually took her to the hospital.  But Mr. Stepp is not charged with raping her at a party in early November, 2003, and she never made the charge that she was raped by him in the manner she eventually testified to until early 2004.

Mr. Stepp pled only ineffective assistance of trial counsel in his one Ground for Relief and does not mention the Confrontation Clause in the Petition. However, both parties have argued the Confrontation Clause question. (Return of Writ, Doc. No. 5, PageID 40-41; Traverse, Doc. No. 10, PageID 971-976.) Moreover, the Confrontation Clause claim was clearly presented in Mr. Stepp's Assignment of Error No. 3 and decided on the merits by the Court of Appeals. There is thus no bar to this Court's deciding the merits of that claim. Of course, the standard is the same: was the Court of Appeals decision contrary to or an objectively unreasonable application of clearly established United States Supreme Court precedent?

In his Merit Brief on Appeal, Petitioner cited the Court of Appeals to *Davis v. Alaska*, 415 U.S. 308 (1974), and *State v. Williams*, 21 Ohio St. 3d 33, 35, 487 N.E. 2d 560 (1986). In his Traverse in this case, he relies on *Davis, supra; Olden v. Kentucky*, 488 U.S. 227 (1988); and *Delaware v. Van Arsdall*, 475 U.S. 673 (1986), from among Supreme Court precedent. He also relies on lower court precedent: *Lewis v. Wilkinson*, 307 F. 3d 413 (6th Cir. 2002); *Boggs v. Collins*, 226 F.3d 728 (6th Cir. 2000); *Gagne v. Booker*, 606 F.3d 278 (6th Cir. 2010)[7]; and *Wiecek v. Leffler*, 693 F. Supp. 2d 723 (E.D. Mich. 2009).[8]

None of the three cited Supreme Court cases involved balancing the Confrontation Clause and a rape shield law.[9] In *Davis*, the Supreme Court overturned a burglary conviction where

---

[7] No consideration is given to this opinion because the Sixth Circuit has granted rehearing en banc and thereby vacated the panel opinion. *Gagne v. Booker*, 2010 U.S. App. LEXIS 15052 (6th Cir. July 20, 2010).

[8] No consideration is given to this opinion because it has been reversed by the Sixth Circuit. *Wiecek v. Lafler,* 2011 U.S. App. LEXIS (6th Cir. Mar. 22, 2011).

[9] Although a rape shield statute was involved in *Olden*, the Kentucky Court of Appeals had held the cross-examination was not barred by the rape shield statute.

defendant was not permitted to cross-examine a witness against him about the witness' juvenile

delinquency adjudication and consequent probation, which was asserted to create undue pressure

from the police and possible bias.  The testimony had been excluded because of the state's policy

of protecting the confidentiality of juvenile delinquency adjudications.  Because the proposed line

of questioning could have done "[s]erious damage to the strength of the State's case," the

confrontation right was held to outweigh the State's interest in confidentiality of juvenile

adjudications.  *Id.*  at 319.  The Court also quoted its holding in *Alford v. United States*, 282 U.S.

687 (1931), that there was a duty to protect a witness from "questions which go beyond the bounds

of proper cross-examination merely to harass, annoy or humiliate" the witness. *Id.*  at 320, *citing*

*Alford*, 282 U.S. at 293.

In *Olden v. Kentucky, supra,* a rape case against two black defendants, the trial court

prohibited cross-examination of the white female complaining witness about her extramarital

cohabitation with a different black male.  The defense in the case was that the sex was consensual

and defendant sought to show the complaining witness had a motive to lie to protect her relationship

with the third party.  The Kentucky Court of Appeals, after holding the Kentucky rape shield law

inapplicable, upheld exclusion of the evidence on grounds its likely prejudicial effect outweighed

its probative value. In a *per curiam* opinion, the Supreme Court reversed, holding

> While a trial court may, of course, impose reasonable limits on
> defense counsel's inquiry into the potential bias of a prosecution
> witness, to take account of such factors as "harassment, prejudice,
> confusion of the issues, the witness' safety, or interrogation that
> [would be] repetitive or only marginally relevant," *Delaware v. Van
> Arsdall, supra*, at 679, the limitation here was beyond reason.
> Speculation as to the effect of jurors' racial biases cannot justify
> exclusion of cross-examination with such strong potential to
> demonstrate the falsity of Matthews' testimony.

488 U.S. at 232.  Also citing *Van Arsdall*, it held errors in denial of a defendant's opportunity to impeach, as with other Confrontation Clause errors, are subject to harmless error analysis. *Id.* Quoting *Van Arsdall*, it reaffirmed the factors to be considered in determining whether the error was harmless:

> The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt.  Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Id.*  at 232-233, *quoting Van Arsdall*, 475 U.S. at 684.  In *Van Arsdall* itself, the trial court had barred cross-examination of a prosecution witness on the fact that a public drunkenness charge against him had been dismissed after he agreed to speak to the prosecutor about the murder case in question.  The Supreme Court described this evidence as prototypical evidence of bias and its exclusion a violation of the Confrontation Clause, but remanded for application of harmless error analysis.  Thus none of the three cited United States Supreme Court cases squarely hold that policy considerations behind a state's rape shield law or other state policy considerations embedded in evidence law may not in some cases outweigh a defendant's asserted Confrontation Clause rights.

In *State v. Williams*, *supra*, the Ohio Supreme Court found exclusion, under the Ohio rape shield statute, of testimony of two male witnesses that they had had sex with the complaining witness in a rape case and that she had a reputation as a prostitute, error under the Confrontation Clause because of its relevance to the witness' claim that she was a lesbian and would never have

-14-

had consensual sex with the defendant.

*Lewis v. Wilkinson,* 307 F.3d 413 (6th Cir. 2002), is a post-AEDPA habeas corpus rape case.

The Court of Appeals granted the writ on a finding that entries from the victim's diary, excluded

under the Ohio rape shield statute, were relevant to both consent and the victim's motives in

pursuing the charges. The court distinguished between proffered cross-examination going to motive

and that going to general credibility.

> The decisions in *Davis* and *Boggs* dictate that the issue of a witness's
> motivation in testifying carries with it the constitutionally protected
> right of cross-examination. This court disagrees with the district
> court's characterization of the excluded diary entries as going solely
> to general credibility of the witness. When a trial court has limited
> cross-examination from which a jury could have assessed a witness's
> motive to testify, a court must take two additional steps:
>
> > First, a reviewing court must assess whether the jury
> > had enough information, despite the limits placed on
> > otherwise permitted cross-examination, to assess the
> > defense theory of . . . improper motive. Second, if this
> > is not the case, and there is indeed a denial or
> > significant diminution of cross-examination that
> > implicates the Confrontation Clause, the Court applies
> > a balancing test, weighing the violation against the
> > competing interests at stake.
>
> *Boggs*, 226 F.3d at 739 (citations omitted).

*Lewis*, 307 F.3d at 421.  Once a court finds that the Confrontation Clause is implicated, it must

"weigh such violation against the competing interests at stake - in this case the protections offered

by Ohio's rape shield law." *Id.*  at 421-422.  The court in *Lewis* found the excluded statements went

directly to the issues of consent and motive.  *Id.*  at 422.  Since it was error under the Confrontation

Clause to exclude the diary entries, the court noted that harmless error analysis was to be applied,

using the standard in *Brecht v. Abrahamson,* 507 U.S. 619 (1993).

-15-

*Boggs v. Collins*, 226 F.3d 728 (6th Cir. 2000), is an earlier Ohio rape case.  Defendant had

sought to question the complaining witness about a false accusation of rape she had made a month

earlier and introduced other testimony corroborating the falseness of the prior accusation.  The Ohio

Court of Appeals assumed the testimony had been excluded under the rape shield law and found that

exclusion to be in violation of the Confrontation Clause.  On certification the Ohio Supreme Court

determined that prior false accusations of rape where no sexual activity at all occurred were not

within the rape shield statute but, being entirely collateral, could not be proven by extrinsic

evidence. It also found that the approach it prescribed did not implicate the Confrontation Clause.

On habeas, Judge Beckwith of this Court found a Confrontation Clause violation.  On appeal, the

Sixth Circuit reversed.  The court noted the distinction made in *Davis v. Alaska, supra*, between

cross-examination which attacks the general credibility of a witness and cross-examination intended

to demonstrate bias.  Summarizing the law in other circuits, Judge Jones wrote:

> When faced with alleged prior false accusations of rape, federal
> courts have adhered to the fine line drawn in *Davis* and *Van Arsdall*,
> finding cross-examination constitutionally compelled when it reveals
> witness bias or prejudice, but not when it is aimed solely to diminish
> a witness's general credibility.

226 F.3d at 737.  The court noted that in *Michigan v. Lucas*, 500 U.S. 145 (1991), the Supreme

Court had upheld the notice and hearing provision of the Michigan rape shield law even though it

prevented cross-examination of a rape victim.  Petitioner in Boggs was "silen[t] as to a theory of

motive [which] sharply differentiates this case from those where courts have found Confrontation

Clause violations."  *Id.*  at 741.

Applying this law to the instant case, the Court finds that Mr. Stepp's counsel made an

argument for the examination in question which claimed to be about motive, although the Court of

Appeals believed the motive was actually a general credibility attack.  But none of the Confrontation Clause jurisprudence discussed above suggests that evidence purportedly in support of a completely implausible theory of motive must be admitted.  Mr. Stepp has not explained how making a completely false accusation of rape in February, 2004, would have put Ms. Tidmore back "in control" of her probation, remembering that being in control meant being able to continue to take drugs without being "violated" and was obtained by corrupting a probation officer who had been fired.  There is no defense of consent in this case.  There is also no claim of a motive to make up a rape to protect a relationship with someone else.[10]  Even if Mr. Stepp's Confrontation Clause rights were implicated, the trial judge was entitled to weigh against them the likelihood the jury would principally see this evidence as further impacting Ms. Tidmore's general credibility.

Even if it was error to exclude this evidence, the error was harmless.  There is strong corroboration of Ms. Tidmore's testimony from the similarity of the attacks made on the other two complaining witnesses.  Entirely apart from that, there is corroboration from Ms. Tidmore's ability to describe the inside of the house to which she testified Stepp took her.  Of course, Mr. Stepp was permitted a very extensive cross-examination of Ms. Tidmore on general credibility issues.  And overall the prosecution's case was quite strong: it had three very parallel rapes of prostitutes with quite similar *modus operandi*.

In sum, the Court of Appeals Confrontation Clause ruling was not an objectively unreasonable application of clearly established Supreme Court precedent.  Even if it had been, any error was harmless in that this Court "is satisfied it did not have a substantial and injurious effect

---

[10] Except for the possibility of making up the November 5, 2003, "party rape" to protect her relationship with her boyfriend.

or influence in determining the verdict." *Brecht v. Abrahamson*, 507 U.S. 619 (1993).[11]

## Conclusion

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice. It is, however, possible that reasonable jurists would disagree. Therefore, if the Court dismisses the Petition as recommended, it should also grant a certificate of appealability and permit Petitioner to appeal *in forma pauperis*.

August 5, 2011.

s/ **Michael R. Merz**
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas*

---

[11] In *Brecht*, the Supreme Court adopted the harmless error standard recited here in place of the prior standard that error had to be harmless beyond a reasonable doubt.

*v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

J:\Documents\Stepp Habeas R&R.wpd