UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Brian T. Stepp, | : Case No. 1:10-cv-282 |
| Petitioner, | : |
| vs. | : |
| Warden, Warren Correctional Institution, | : |
| Respondent. | : |

**ORDER**

Before the Court are Petitioner's objections to the Report and Recommendation of the Magistrate Judge. (Doc. 15) The Magistrate Judge has recommended that this Court dismiss Stepp's petition for a writ of habeas corpus with prejudice. (Doc. 14) The Magistrate filed a Supplemental Report and Recommendation responding to Stepp's objections (Doc. 16), and a Second Supplemental Report responding to Stepp's objections to the supplemental report. (Doc. 19) Stepp has lodged his objections to the Second Supplemental Report, and this matter is ripe for decision by this Court.

**FACTUAL BACKGROUND**

Stepp was convicted by a jury of kidnaping and raping three women, one of whom was Carrey Tidmore. There was no scientific evidence linking Stepp to Tidmore's rape, such as DNA, hair or fiber samples. Tidmore admitted at Stepp's trial that in

-1-

November 2003, she supported herself and her narcotics addiction by prostitution. She had been engaging in prostitution for almost twenty years prior to Stepp's February 2007 trial.

Tidmore testified that one night in November 2003, she was on the street looking "to turn a trick" (to secure a customer). She got in a car with a man who stopped, and the man drove fast and would not answer her question about what service he wanted to purchase. He pulled out a badge and told her she was under arrest for prostitution. He also displayed a gun, and drove into the parking lot of a local police station. Tidmore told the man that rather than perform a sexual favor for him as he suggested, she would submit to being arrested. The man then drove to a field and forced her to have sex. He then handcuffed her, took her to a house and assaulted her again. Later, he drove her to a gas station and left her there. The gas station clerk offered to call the police, but she refused because she was on probation and knew she would receive jail time for prostitution. She testified that she went to a friend's house and took drugs after this incident.

On November 10, Tidmore admitted to her probation officer that she had been using cocaine. She knew this would result in a probation violation and another jail sentence. She did not report the rape to her probation officer. Later that day, she went to a local emergency room and was interviewed by rape

counselors. She testified on direct that she went to the hospital two days after the rape, but on cross she admitted that the medical records contained her statement that the rape happened five days prior to her visit. She did not report the rape to the police at that time. She was arrested on the probation violation and sent back to jail on or about November 20, where she apparently remained until sometime in January or February 2004. It was not until mid February 2004 that she told a Butler County Sheriff's deputy about the rape. She testified that she was questioned by police about an ongoing, unrelated murder investigation, and revealed the rape to them. She described her rapist as a "white, thin male, with light hair, drove a red four-door car." (Doc. 8, TR at PAGE ID 487)[1] Tidmore said that she had been tormented by the experience since it happened. (TR at PAGE ID 485) A few days later, a deputy showed her some photographs and she identified Stepp as her attacker. She also described the house to which he had taken her that night.

On cross-examination by Stepp's trial counsel, Tidmore admitted to a string of previous convictions for theft, falsification, and failure to comply with police officers. She was on probation for three different felony convictions in

---

[1] The Court will use the CM/ECF PAGE ID references to the trial transcript, because the original pagination is thrown off by the manner in which the transcript was compiled and filed.

November 2003, and admitted she concealed her prostitution from her then-boyfriend. She claimed that she had been drug-free for a year, but she was confronted with the fact of several positive cocaine tests in August and September 2003. Counsel reviewed at some length the many inconsistencies in the story she gave to the hospital rape counselors in November 2003, her several statements to the police, and her testimony to the jury. Stepp's counsel also demonstrated that Tidmore had been jailed with the other complaining witnesses during January and February, both before and after Tidmore identified Stepp in the photo lineup.

Counsel then asked Tidmore why her probation officer had not violated her probation for the series of failed drug tests in August and September 2003. (TR at PAGE ID 520) The trial court sustained the prosecutor's objection to that question, and at a sidebar conference, Stepp's counsel argued that he had evidence that Tidmore was having a sexual relationship with her probation officer that summer. Counsel claimed that Tidmore traded sexual favors with the probation officer to avoid returning to jail on a probation violation. Counsel's theory was that after her probation was revoked in November, Tidmore lacked "leverage" with which to get out of jail and return to using drugs, so she made up the rape allegation in order to present herself to the police and/or her probation officer as a sympathetic victim. The prosecutor told the trial court that the probation officer in

question had been disciplined (and perhaps fired), but that the proposed testimony fell within Ohio's rape shield law. The trial court initially responded that this evidence had not been brought to its attention previously, and that "if counsel knew that [he] was going into this, counsel had a duty to raise this at a rape shield hearing prior to this trial. ... There has been no motion brought before the Court as is contemplated by the rules. ... I believe [the evidence] clearly falls under rape shield, and on that basis I am going to sustain the objection." (TR at PAGE ID 523) The jury ultimately convicted Stepp on three counts of rape, and he was sentenced to an aggregate term of fifty-five years.

Stepp raised several assignments of error in his direct appeal from his conviction, including Assignment of Error III:

> Trial counsel provided constitutionally
> ineffective assistance of counsel when he
> failed to raise evidence that clearly fell
> within the rape shield law in a pretrial
> motion. The trial court violated Brian
> Stepp's right to confrontation when it
> excluded relevant impeachment evidence.

Stepp argued that the excluded evidence was crucial to prove his theory that Tidmore fabricated the rape story, and its exclusion violated his right to confront Tidmore. He also argued that the trial court's remarks suggested that the court would have considered the evidence and admitted it if Stepp's counsel had timely raised the issue, which Ohio's rape shield law requires. The Ohio Court of Appeals rejected this argument. Applying the

standards set forth in Strickland v. Washington, 466 U.S. 668 (1984), the Court of Appeals found that the evidence at issue would have clearly violated the rape shield law, Ohio Rev. Code 2907.02, barring evidence of specific instances of the victim's sexual activity, and that the evidence did not fall within any exception to that statutory bar. This conclusion would support a finding that his trial counsel's failure to raise the issue prior to trial did not fall below an objective standard of reasonableness.

But Stepp also argued that his constitutional right to confront witnesses outweighed the interests protected by the rape shield statute. The Court of Appeals found that the trial court's characterization of the evidence as a "distinct separate incident" indicated the court's opinion that the evidence had little or no probative value. The court noted:

> ... the point that Stepp's trial counsel was trying to make, i.e., C.T. fabricated the allegation against Stepp to regain "control" of the situation regarding her probation after her affair with her former probation officer was revealed, was a tenuous one, at best, and therefore, it is unlikely the trial court would have found, under these circumstances, that Stepp's confrontation rights outweighed the interests sought to be protected by this state's rape shield law.
>
> [*P54] Moreover, it cannot be shown that there was a reasonable probability that the outcome of Stepp's trial would have been different had this evidence been admitted. The evidence of Stepp's guilt was formidable and, arguably, overwhelming. C.T.'s testimony was corroborated by the other victims in the case, as well as the evidence the police found as a result of searching Stepp's residence, which included a red

vehicle and a silver badge that matched C.T.'s version
of events. Also, the detectives who searched Stepp's
residence testified that the layout of Stepp's house
matched C.T.'s description of the house. C.T.'s
testimony was also corroborated by that of H.K. and
J.G., who testified that Stepp attacked them in a
similar fashion and around the same time period.

>   [*P55] When the state's evidence against Stepp is
> viewed in its entirety, it is clear that the trial
> court's exclusion of evidence regarding C.T.'s alleged
> affair with her former probation officer did not change
> the outcome of Stepp's trial, nor does it undermine our
> confidence in the outcome of these proceedings.
> *Strickland*, 466 U.S. at 694.

State v. Stepp, 2008 Ohio 4305, ¶¶53-55, 2008 Ohio App. LEXIS 3613, *18-19 (Ohio App. 12th Dist., August 25, 2008). After overruling Stepp's other assignments of error, the Court of Appeals affirmed his conviction.

Stepp's habeas petition, filed on May 3, 2010, raises a single ground for relief:

> Trial counsel provided constitutionally ineffective
> assistance of counsel when he failed to timely notify
> the trial court of his intent to offer evidence covered
> by Ohio's Rape Shield statute. Counsel's failure to
> perform in an objectively reasonable manner caused
> actual prejudice. Had Mr. Stepp been permitted to
> confront his accuser, Ms. Carrey Tidmore, she would
> have been discredited as a witness, and Mr. Stepp would
> not have been convicted of the crimes that she alleged.

## ANALYSIS

A federal court may issue a writ of habeas corpus to correct an error in a state proceeding that resulted in petitioner's confinement, if that proceeding was rendered fundamentally unfair by a violation of the Constitution or laws of the United States.

-7-

Clemmons v. Sowders, 34 F.3d 352, 354 (6th Cir. 1994); 28 U.S.C. §2254(a).

To establish ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), Morrison must show that his attorney's performance was deficient, and that the deficiency prejudiced his defense such that the proceedings were unfair and the result unreliable. Id. at 687. Scrutiny of counsel's performance is highly deferential. Id. at 689-90. To satisfy the prejudice prong of the Strickland test, "[the] defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. ... A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 698.

As the Magistrate Judge notes, the Ohio Court of Appeals did not directly address Stepp's counsel's deficient performance. But that court specifically concluded that admission of the evidence of Tidmore's sexual relationship with her probation officer would have violated Ohio's rape shield law. Thus, even if the issue had been timely raised before trial, or if counsel had demonstrated good cause for not raising it sooner (thus negating any deficient performance), the evidence would have been inadmissible. Stepp arguably cannot demonstrate that his counsel's performance was deficient due to his failure to seek

admission of statutorily inadmissible evidence.

Even if counsel's failure to properly seek admission of the evidence fell below the objectively reasonable standard, the Court of Appeals also found that the evidence would not have affected the outcome of Stepp's trial, a conclusion the Magistrate Judge shares. Tidmore's description of her encounter with Stepp was remarkably consistent with the testimony of the two other complaining witnesses, both of whom were also prostitutes. Both of those witnesses said Stepp was driving a red car, and both testified that Stepp was impersonating a police officer. He displayed a badge to one of the other victims as he had done with Tidmore. Tidmore's description of Stepp's house was accurate. Moreover, Stepp's counsel engaged in an extensive impeachment of Tidmore, stressing her prior convictions, her many inconsistent statements about the rape and her failure to timely report it, her drug addiction, her exposure to another complaining witness, and several periods of incarceration. It is extremely unlikely that the jury would have been convinced to disregard her testimony if they learned that she had sex with her former probation officer.

The Court agrees with the Magistrate Judge's observation that Stepp's theory regarding Tidmore's motive is tenuous at best. Stepp summarizes his position by arguing that "... had that testimony been admitted, the jury would not have accepted

the testimony of Ms. Tidmore as true because the jury would have understood that Ms. Tidmore would do anything to curry favor with the police." (Doc. 17 at 8) After she reported her cocaine use, Tidmore remained in jail from November 20, 2003 through sometime in January or February 2004. There is no evidence in the record suggesting that she was let out of jail early or treated more favorably because she was a rape victim, or because she disclosed the rape to the police in February rather than when it happened during the previous November. Stepp's theory of Tidmore's motive assumes that other law enforcement personnel would engage in the same sort of unethical, outrageous conduct that Tidmore's former probation officer apparently engaged in, an assumption that is completely unsupported by any facts in the record.

Stepp also contends that the trial court's ruling violated his Sixth Amendment Confrontation Clause rights. This claim was presented to and decided by the state court. Although this constitutional claim is not presented as a separate ground for relief in Stepp's petition, the issue is entwined with his arguments concerning ineffective assistance of counsel. Both parties presented extensive arguments on the issue, and the Magistrate Judge addressed it on the merits.

This Court must determine if the Ohio Court of Appeals judgment with respect to Stepp's confrontation rights was an

objectively unreasonable application of clearly established federal law, pursuant to 28 U.S.C. §2254(d)(1). Stepp's traverse brief argues:

> Since 1974, the Supreme Court has ruled in substantially similar circumstances, that when the evidence would have established an ulterior motive, the state's interest must yield to the defendant's right to confront his accuser. *Olden v. Kentucky*, 488 U.S. 227 (1988); *Alaska v. Davis*, 415 U.S. 308 (1974)[sic]. *See Boggs v. Collins*, 226 F.3d 728, 737, 740 (6th Cir. 2000) (listing cases and stating that when cross examination would reveal witness bias or prejudice, the trial court is constitutionally compelled to allow the examination).

(Doc. 10 at 13) In <u>Davis v. Alaska</u>, 415 U.S. 308 (1974), the defendant was charged with burglary of a safe that was stolen from a bar. He was prohibited from cross-examining the critical witness against him (the stolen safe had been found on this witness's property) about the witness's juvenile record and current probation status, based on a state statute protecting juvenile proceedings. The witness had two prior juvenile burglary convictions and was still on probation at the time. The defendant argued that the witness was biased and had a motive to lie, because he was afraid the police would blame him for the burglary. The Supreme Court held that the trial court's limit on cross-examination violated defendant's confrontation rights:

> While counsel was permitted to ask Green [the witness] whether he was biased, counsel was unable to make a record from which to argue why Green might have been biased or otherwise

-11-

> lacked that degree of impartiality expected
> of a witness at trial. On the basis of the
> limited cross-examination that was permitted,
> the jury might well have thought that defense
> counsel was engaged in a speculative and
> baseless line of attack on the credibility of
> an apparently blameless witness or, as the
> prosecutor's objection put it, a "rehash" of
> prior cross-examination. On these facts it
> seems clear to us that to make any such
> inquiry effective, defense counsel should
> have been permitted to expose to the jury the
> facts from which jurors, as the sole triers
> of fact and credibility, could appropriately
> draw inferences relating to the reliability
> of the witness.

Id. at 318.

The Sixth Circuit applied Davis and its progeny in Boggs v. Collins, 226 F.3d 728 (6th Cir. 2000), in an appeal from a rape conviction in which the trial court excluded evidence that the complaining witness made a prior false rape accusation. After reviewing other appellate decisions, the court held: "When faced with alleged prior false accusations of rape, federal courts have adhered to the fine line drawn in Davis and Van Arsdall,[2] finding cross-examination constitutionally compelled when it reveals witness bias or prejudice, but not when it is aimed solely to diminish a witness's general credibility." Boggs, 226 F.3d at 737.[3]

---

[2] Delaware v. Van Arsdall, 475 U.S. 673 (1986).

[3] The Sixth Circuit has questioned the bright line drawn in Boggs between bias and prejudice on the one hand, and a witness's general credibility. See Vasquez v. Jones, 496 F.3d 564, 572-574, 6th Cir. 2007), where the court granted habeas relief after

-12-

Distilling these relevant authorities, the Magistrate Judge found that there is no constitutionally-protected confrontation right to admit evidence of a "completely implausible theory of motive." (Doc. 14 at 17) Stepp did not raise consent as a defense to the rape charge, nor did he articulate a typical motive for Tidmore to lie such as protecting someone else or trying to hide something unfavorable about her own life, the problems of which she was extensively and effectively cross-examined. This Court also notes that in his closing argument, Stepp's counsel presented his theory that Tidmore (and the two other complainants, both of whom were also prostitutes with criminal histories) concocted her story about Stepp in order to curry favor with the police. The jury obviously rejected Stepp's argument. This Court cannot conclude that evidence about Tidmore's rogue probation officer's conduct in accepting sexual favors in exchange for ignoring her failed drug tests would have effectively bolstered his argument.

---

the state court admitted an unavailable prosecution witness's hearsay testimony from the preliminary hearing, but did not permit defendant to impeach that witness with his criminal history. However, Vasquez distinguished Boggs because it was a rape shield case, noting the legitimate state interest in such laws. The court also distinguished Boggs on its facts because the trial court had permitted extensive cross-examination of the complaining witness, and had only excluded the past false rape allegations. Vasquez observed that Boggs "is better seen as a case about the court's broad discretion to limit the scope of cross-examination to prevent undue harassment and the like." Vasquez, 496 F.3d at 574.

In any event, if there was a confrontation clause violation, it would be subject to harmless-error review. Delaware v. Van Arsdall, 475 U.S. at 684. The Court must determine whether the error "had [a] substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993), quoted in Ruelas v. Wolfenbarger, 580 F.3d 403, 411 (6th Cir. 2009). "If the matter is so evenly balanced that this Court has grave doubt as to the harmlessness of the error, it should treat the error, not as if it were harmless, but as if it affected the verdict...". Vasquez v. Jones, 496 F.3d 564, 575 (6th Cir. 2007) (internal citations and quotations omitted).

The Magistrate Judge concluded that any confrontation error was harmless. He cited the strong corroboration of Tidmore's testimony by the other complainants, and her ability to accurately describe the house where she was raped. The police found a badge and a red car when they searched Stepp's house. These factors were also cited by the Ohio Court of Appeals in rejecting Stepp's ineffective assistance of counsel claim, concluding that the admission of the evidence at issue would not have changed the outcome of the trial.

The Supreme Court has identified several factors the Court should consider in assessing harmlessness, including "the importance of the witness'[s] testimony in the prosecution's case, whether the testimony was cumulative, the presence or

absence of evidence corroborating or contradicting the testimony of the witness on material points, ... and, of course, the overall strength of the prosecution's case." <u>Delaware v. Van Arsdall</u>, 475 U.S. at 684. While the importance of Tidmore's testimony to the prosecution is clear, the excluded evidence of her relationship with the probation officer was not critical to the case against Stepp. Indeed, the trial court considered the matter "a distinct separate incident." (TR at PAGE ID 523) The testimony was not cumulative, but its relevance to either the charges or to Stepp's defense is extremely tenuous. And the most important factor in this case, as the Ohio Court of Appeals concluded, is the overall strength of the prosecution's other evidence against Stepp.

This Court must conclude, after fully considering the record and Stepp's arguments, that any error in excluding the evidence in question was harmless. For the same reasons, the Court finds that any deficient performance by Stepp's trial counsel did not affect the outcome of his trial.

Stepp has also objected to the Magistrate Judge's filing of supplemental reports and asks that both of them be stricken. He argues that the General Order of Reference for the Dayton division conflicts with the statutory limits on a magistrate judge's authority, and usurps the exclusive jurisdiction of this Court to review de novo a magistrate judge's recommendations.

This Court finds nothing in the General Order of Reference, or in the issuance of a supplemental report, that obviates or interferes with this Court's duty to conduct a de novo review of objections raised by a petitioner.[4] The Court also notes that the supplemental report was filed in part to respond to Stepp's objection that the Magistrate Judge had treated his ineffective assistance and confrontation clause claims separately. Stepp's request to strike the supplemental reports is therefore denied.

## CONCLUSION

As required by 28 U.S.C. §636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), the Court has conducted a de novo review of the record in this case. Upon such review, the Court finds that Stepp's objections to the Magistrate Judge's original and his Supplemental Reports are not well taken, and his objections are therefore overruled. The Court denies the petition for a writ of habeas corpus.

The Court finds that a certificate of appealability should issue with respect to Stepp's petition, because reasonable jurists would find it debatable whether his claim should be resolved in a different fashion, and whether the issue he presents is adequate for further proceedings. Miller-El v.

---

[4] Stepp raises a number of potentially prejudicial scenarios that might result if a petitioner fails to timely object to a supplemental report. None of those possibilities have occurred here, and the Court need not address such speculative scenarios.

Cockrell, 537 U.S. 322, 336 (2003).

The Court certifies, pursuant to 28 U.S.C. §1915(a)(3) that an appeal of this Order would be taken in good faith, and grants Stepp leave to appeal in forma pauperis upon a showing of financial necessity. See Kincade v. Sparkman, 117 F.3d 949, 952 (6th Cir. 1997).

SO ORDERED.

THIS CASE IS CLOSED.

DATED: November 14, 2011  s/Sandra S. Beckwith
Sandra S. Beckwith
Senior United States District Judge